UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIM. NO. 08 CR 0009 |
| VERSUS | * | JUDGE HAIK |
| O'TERRELL BOUTTE | * | MAGISTRATE JUDGE HILL |

REPORT AND RECOMMENDATION

The defendant, **O'TERRELL BOUTTE** ("Boutte"), has filed a motion to suppress evidence seized during the search of his residence located at 306 Gloria Switch Road in Lafayette, Louisiana, and to suppress certain statements that he made to Deputy Sheriff Josh Guy after his arrest. For those reasons set out below, the undersigned recommends that the motion to suppress be **denied**.

On January 16, 2008, the defendant was indicted in a six count indictment charging him with possession with intent to distribute cocaine, possession with intent to distribute cocaine base (crack), possession of a firearm during, and in relation to, a drug trafficking crime, possession of a firearm by a convicted felon and two forfeiture counts. [Record Doc. 1]. These charges all relate to items seized during a search made of the defendant's residence, located at 306 Gloria Switch Road in Lafayette Louisiana, on August 23, 2007.

The defendant filed a motion to suppress the evidence seized during that search, and also to suppress statements which he allegedly made to Deputy Sheriff Josh Guy after his arrest. [Record Doc. 24]. The government responded to the defendant's motion to suppress

[Record Doc. 26] and a hearing on the defendant's motion was held on March 27, 2008. Thereafter, post-hearing briefs and supplemental briefs were filed by both parties. [Record Docs. 39, 41, 47 and 48]. This report and recommendation follows.

**FACTS**

On August 23, 2007, Deputy Sherif Micah Eugene ("Eugene"), Lafayette Parish Sheriff's Office, Warrants Division, received word, from his dispatcher, that two bounty hunters[1] had located a fugitive on whom Eugene had active warrants. Eugene, who is a 14 year deputy sheriff, requested backup, and proceeded to meet the two bounty hunters at Coco's convenience store, located on East Gloria Switch Road in Lafayette Parish. When Eugene arrived at Coco's, he met Deputy Sheriff Lane LeBlanc ("LeBlanc"), and fugitive recovery agents Fisher and Watley.

Fisher and Watley informed the deputies that they had located a fugitive, the defendant, Boutte, at a residence located at 306 Gloria Switch Road. Eugene had 5-6 fugitive bench warrants for the defendant in his possession, and believed that other deputies had additional warrants on Boutte. Fisher and Watley also informed the deputies that they had surveilled the residence throughout the day, had seen a female leave the residence in the only car and had positively identified Boutte standing on the porch of the residence and

---

[1]These persons are sometimes referred to as "fugitive recovery agents" and are employed by bail bond services to locate persons who have defaulted on their bail bond obligations, and on whom fugitive warrants often have been issued. There is no evidence in this record that either one of the "fugitive recovery agents" were commissioned police officers, although there is some indication, (from the testimony of Deputy Eugene), that the "fugitive recovery agents" had arrest powers.

returning inside.

All four of the men then proceeded to the house with the intention of executing the arrest warrants. When they arrived at the house, Deputy LeBlanc went to the back of the house, Deputy Eugene went to the right front corner of the house, one of the bounty hunters went to the left front porch and the other bounty knocked on the door. After some period of time, Boutte answered the door.[2]

When Boutte finally opened the door, he was ordered to lie down, which he did. Handcuffs were then placed on Boutte by either Eugene or one of the bounty hunters. While Boutte's exact location is in dispute, the court finds that he was lying across the door sill, with his head on the porch and his feet inside the house at the time he was handcuffed.

As soon as Boutte opened the door, deputies Eugene and LeBlanc came up onto the porch to Boutte's location. Both deputies testified that they saw, in plain view on a kitchen table, illegal drugs. Deputy Eugene characterized the drugs in plain view as "white cocaine"; Deputy LeBlanc characterized the drugs that he saw in plain view as "some cookies, cocaine and cookies in a plastic bag".[3] [4]

The deputies then immediately conducted what they referred to as a "protective sweep" of the house to determine whether or not anyone else was present. Both deputies

---

[2] There is a dispute over how much time it took Boutte to answer the door. For the purposes of this Report and Recommendation the length of delay is not relevant.

[3] Neither of the bounty hunters testified at the hearing on the motion to suppress.

[4] "Cookies" is a slang term for crack cocaine.

testified that it was "common procedure" to do a protective sweep when they made an arrest in a house, and they did so routinely, every time, on all warrants, regardless of what information they had as to other possible occupants in the house. During this "protective sweep", the deputies testified that they found a rifle under a bed, drug paraphernalia, liquid codeine and the several thousand dollars in currency.[5]

After finding the illegal drugs, the deputies called their supervisor for assistance. They were instructed to contact the narcotics office, which they did. Deputy Sheriff Josh Guy was dispatched to assist in the investigation. Guy, a 10 year veteran of the sheriff's office who is assigned to the Metro Narcotics task force, testified that he was dispatched to takeover the investigation from the warrant officers since narcotics had been found at the house. Guy testified that, when he arrived, he was told that no one had touched anything at the scene. Guy further testified that he could see, from the front door, in plain view, marijuana and crack "cookies". Guy further testified that he knew both of the bounty hunters, apparently having worked with them before.

After talking to the deputies and the bounty hunters, Guy decided to apply for a search warrant for the house. Guy contacted Commissioner Thomas Frederick, 15th Judicial District Court, State of Louisiana, and made application for a search warrant for the

---

[5]There was a discrepancy in the testimony by the deputy sheriffs as to when marijuana was found. Deputy Eugene testified that the marijuana was in plain view on the table. Deputy LeBlanc testified that the marijuana was located during the "protective sweep". Because of the basis for the undersigned's recommendation, it is unnecessary for the undersigned to address this discrepancy in the testimony.

residence located at 306 Gloria Switch Road, Lafayette, Louisiana. Commissioner Frederick issued the warrant, based on Deputy Guy's application and affidavit, and Deputy Guy then returned to the residence and executed the warrant. The items of evidence which are the subject of this motion to suppress were formally seized during the execution of that warrant.

Deputy Guy testified that he advised the defendant, Boutte, of his *Miranda* rights at the scene.[6] After the search was completed, Boutte was transported to the Sheriffs Office where he made the statement to Guy which is now a subject of this suppression motion.

## LAW AND ANALYSIS

**The statement**

Custodial interrogations are inherently coercive.[7] To counter the inherently coercive nature of a custodial interrogation, under *Miranda,* "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *United States v. Cardenas*, 410 F.3d 287, 292 (5th Cir. 2005). There is no talismanic incantation of phrases required to satisfy the strictures of *Miranda*. Nevertheless, the *Miranda* safeguards are "most commonly satisfied by giving the defendant the customary *Miranda* warnings: That he has the right to remain silent, that

---

[6]Deputy Guy advised Boutte of his *Miranda* rights orally; no written *Miranda* waiver form was apparently filled out.

[7]Obviously, this was a custodial interrogation.

anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that an attorney will be provided for him if he cannot afford to hire one." *Id*.

When the defendant challenges the voluntariness of a confession, the government must prove its voluntariness by a preponderance of the evidence in order for the confession to be admissible. *United States v. Reynolds*, 367 F.3d 294, 297-298 (5th Cir. 2004).

A defendant's waiver of his *Miranda* rights is effective only if voluntary. The inquiry whether a valid waiver has occurred "has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Cardenas*, 410 F.3d at 292-93.

The voluntariness determination is made on a case-by-case basis and is viewed under the totality of the circumstances surrounding the interrogation. A crucial aspect is the presence or absence of coercive behavior on the part of the government. "The voluntariness of a waiver of [*Miranda* rights] has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." (internal citation omitted) *Id*. at 293.

Here, the evidence is uncontroverted that Deputy Guy advised Boutte of his *Miranda* rights, and thereafter Boutte made a statement to Guy. There is no evidence of any coercion or overreaching by Guy. There is no allegation that Boutte did not fully understand his

*Miranda* rights. Under the circumstances, the Court finds that the defendant, Boutte, was fully advised of his *Miranda* rights and that the statement given thereafter by Boutte was free and voluntary. There is no evidence in this record to support any other conclusion. Accordingly, the statement made by Boutte is admissible at trial against him.[8] The motion to suppress the statement should be **denied**.

**The search**

The defendant, Boutte, argues that the search warrant issued in this case by Commissioner Frederick is invalid because it is based on probable cause secured by an illegal search, and because there is insufficient indicia of reliability set out in the affidavit so as to allow Commissioner Frederick to make an independent assessment of the reliability of the non-police "informants", Fisher and Watley. In this regard Boutte argues that the probable cause developed by Deputy Guy was as a result of an illegal intrusion into Boutte's residence, and that, therefore, the items seized after the search warrant was secured should be suppressed. Boutte also argues that since there is no statement in the affidavit so as to allow Commissioner Frederick to assess the reliability of Fisher and Watley, that probable cause for the issuance of the search warrant is lacking.

The government argues that the "plain view" exception to the search warrant requirement exists as to those items which Deputy Eugene and Deputy LeBlanc saw on the

---

[8] Boutte testified that he did not have a lawyer present at the time that the statement was given. Boutte **never** testified that he requested a lawyer.

table from the front door of the house. The government further argues that the "protective sweep" was permissible due to exigent circumstances, and that Commissioner Frederick had sufficient probable cause to issue the search warrant. In the alternative, if probable cause is lacking, the government argues that the "good faith exception" to the search warrant requirement exists in this case, and that, therefore, the items seized should not be suppressed.

**Plain view**

Generally, warrantless searches are justifiable only if they fall under one of the "'specifically established and well-delineated exceptions' to the general warrant requirements." *United States v. Garza*, 921 F.2d 59, 60 (5th Cir. 1991) *citing Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967) *quoting United States v. Cisneros-Mireles*, 739 F.2d 1000, 1002 (5th Cir.1984) *quoting Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971).

When a warrantless search is conducted, the burden is on the government to prove that the search fits within one of the well delineated exceptions to the warrant requirement. *United States v. Jones,* 234 F.3d 234, 239 (5th Cir. 2000). One of the exceptions to the warrant requirement is the "plain view" exception, on which the government relies here. The Fifth Circuit has recognized three criteria which must be met before a "plain view" search is allowed. First, the law enforcement officer who discovered the object in plain

view must have had a lawful right to be in the place where he was when he saw the item. Second, the object it must be in plain view. Third, the inculpatory nature of the object must have been apparent, in the sense that it would immediately provide law enforcement with probable cause to believe that the object is a derivative of a crime. *United States. v. Santiago*, 410 F.3d 193, 200 ( 5th Cir. 2005).

Here, both Deputy Eugene and Deputy LeBlanc testified that they saw illegal drugs on the dining room table when they looked into the house from the front door. There was some discrepancy in the testimony of the two officers as to precisely the nature the illegal drugs. Both testified that they saw powder cocaine on the table. Deputy LeBlanc testified that, in addition to powder cocaine, he saw some "cookies" of crack cocaine in a plastic bag. Deputy Guy testified that when he arrived at the scene, he saw powder cocaine and "cookies" of crack cocaine on the table, along with some marijuana. Guy further testified that he was informed by Deputies Eugene and LeBlanc that no one had moved any items before he arrived at the scene.

The defendant testified, quite candidly, that the drugs found in the house were his. His testimony differed from the police officers, however, in that he testified that the powdered cocaine was located in a pantry, and that the "cookies" of crack were located in a closed brown paper bag next to the couch on which he was seated at the time that the bounty hunters knocked at his door. While the undersigned has some difficulty in reconciling the testimony of the police officers, the undersigned funds that the testimony of

the police officers, on this issue, is more credible than that of the defendant. It appears clear to the undersigned and that the police officers did, in fact, see some illegal drugs, in plain view, on the table from their location at the front door. Both deputies testified that they saw powder cocaine on the table. Whether they also saw "cookies" of crack cocaine and/or marijuana is unclear.

The undersigned finds that the government has borne its burden of proving the "plain view" exception to the search warrant requirement. The deputies were standing in a place where they had a right to be (the open door of the house arresting the defendant, Boutte), and they saw, in plain view, illegal drugs. That is all that is required for the government to prove a valid "plain view" exception to the search warrant requirement. Accordingly, the deputies entry into the house to seize the drugs on the table was constitutionally permissible.[9]

---

[9]The undersigned is compelled to comment on the poor police work done in this case. Although Deputy Eugene and Deputy LeBlanc made the initial observations which form the basis for these charges, neither of these two deputies wrote any report, or made any written statement, detailing their actions or their observations. Under the circumstances, it is not surprising that their recollections, and their testimony, were divergent.

Apparently, no statements were taken from either Fisher or Watley, in spite of the fact that one of these two men was the first to contact the defendant, and in spite of the fact that they apparently told Deputy Guy that they saw the drugs in plain view, too.

Photographs were taken at the residence. The testimony at the hearing was to the effect that no one knew who took the photographs, nor knew when the photographs were taken. My review of the photographs leads me to conclude that the photographs were "staged", that is, that the photographs were not meant to depict the evidence as it was originally found, but, rather, that the evidence was collected together for photographing. The point is, however, *no one knows*. The undersigned finds that fact extraordinary. If these photographs had been sought to be introduced at trial, the undersigned would have ruled them to be inadmissible. (con't)

**The protective sweep**

After arresting Boutte, the deputies conducted what they characterized as a "protective sweep" of the remainder of the house, looking for other persons who might be present. While doing this "sweep", the deputies did not find anyone else in the house, but did find various other items of evidence, including scales, implements for "cooking" "cookies" of crack cocaine and a rifle with loaded ammunition clips. The deputies were quite candid in admitting that they did these "sweeps" on all arrests, on all warrants regardless of what information they may, or may not, have, on whether or not other persons might be in the house.

The Fifth Circuit has, quite recently, commented on what is necessary before the police may conduct a "protective sweep" such as the one done in this case. In *United States v. Mata*, 517 F.3d 279, 285 (5th Cir. 2008), the court said that the police may perform cursory "protective sweeps" if they have articulable facts, plus rational inferences drawn from those facts, that allow a reasonable officer to suspect that an individual

---

The photographs show the illegal drugs, and a brown paper bag. No clear plastic bags are shown. In short, the photographs to support the defendant's testimony and casts doubt on the testimony of the deputies. Had the deputies not both testified as to the presence of the powdered cocaine on the dining room table, in plain view, the undersigned would have found that the government had failed in its burden of proof to show the "plain view" exception was applicable in this case.

Poor police work, in this case, turned what should have been an easy case into a difficult one. No one is more sympathetic to the difficulties that street police officers face than is the undersigned. As a former street police officer myself, the saying "been there, done that" is always present when I am called upon to pass on the lawfulness of police actions. However, there is no excuse for poor investigative technique and poor evidence gathering procedures, both of which are glaringly present here.

dangerous to the officers is within the area to be searched. *Id*. at 285. Here, the deputies candidly admitted that not only did they not have any articulable facts on which to base rational inferences, they were not interested in any such facts, and never drew any such inferences, because they always search the entire residence when they execute an arrest warrant at a house. In this case, it is clear that the deputies, like they routinely did, searched this house without drawing any inferences, rational or otherwise, as to whether or not anyone else was present in the house. They simply did not care. Clearly, the "protective sweep" conducted by the deputies in this case does not meet the constitutional requirements for exigent searches, and therefore the items of evidence obtained as a result of the "protective sweep" cannot be admitted at trial on that basis.

**The search warrant**

After Deputy Guy arrived at the residence and talked to deputies Eugene and LeBlanc, Guy applied to Commissioner Frederick for a search warrant. A copy of the affidavit in support of the application was introduced at the hearing, and is also attached to the government's supplemental memorandum. [Record Doc. 47]. The affidavit states, in pertinent part,

> After securing Oterrel Boutte, Fisher and Watley observed crack cocaine and marijuana on a table in plain view. After securing Oterrel Boutte, assisting deputies began a safety check of the residence, to ensure no additional persons were inside. While conducting this safety check, an AK-47 assault rifle was observed by Deputy Lane LeBlanc.

The government argues that the seizure of the evidence from Boutte's house was Constitutionally permissible because Deputy Guy acted in good faith in executing the facially valid search warrant issued by Commissioner Frederick. The government relies on *United States v. Leon*, 104 S.Ct. 3405 (1984). In *Leon*, The Supreme Court noted that the exclusionary rule was designed to deter police misconduct rather than punish the errors of judges or magistrates. *Id.* at 3417. Accordingly, the court held that when a police officer, acting in objective good faith, has obtained a search warrant, which is later invalidated, evidence seized pursuant to the execution of the search warrant is not subject to suppression under the exclusionary rule. *Id.* at 3420-21.

The Fifth Circuit employs a two-step test to determine whether or not evidence seized pursuant to a search warrant is subject to suppression. First, the court determines whether or not the good faith exception applies. If the good faith exception does apply, the evidence seized pursuant to the warrant is admissible and the analysis ends. Only if the good faith exception does not apply, should the court then proceed to step two, that is, the determination of whether or not probable cause exists. *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002), *citing United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999).

Where an affidavit contains sufficient information for a police officer to reasonably rely on the judge's determination of probable cause, the police officer acts with objective good faith in executing the warrant. Any evidence seized as a result of that search is admissible at trial. *United States v. Flanders*, 488 F.3d 269, 271 (5th Cir. 2006).

Here, Deputy Guy acted in objective good faith in relying on the probable cause determination made by Commissioner Frederick. Whether or not Commissioner Frederick should have relied, in part, on evidence obtained during the "protective sweep" and whether or not he should have relied on the statements made to Deputy Guy by the bounty hunters is not at issue here. The affidavit at issue here is much more than an "bare bones"affidavit; there is no allegation, or indication, that Deputy Guy either lied to, or recklessly misled, Commissioner Frederick. The affidavit contained facts sufficient for Deputy Guy to objectively believe that probable cause existed to justify the issuance of the warrant.[10] [11]

Accordingly, Deputy Guy was entitled to rely on the warrant, issued by Commissioner Frederick, and all evidence seized as a result of the execution of the search warrant is admissible, including any evidence which had previously been disclosed during the "protective sweep", since any such evidence would have been located during the execution of the search warrant even if it had not been found during the protective sweep.

---

[10]Even if the reference to the rifle found during the sweep is disregarded, Deputy Guy was objectively reasonable in relying on the statements of the two bounty hunters, that they saw illegal drugs in plain view on the table, as being sufficient for Commissioner Frederick to have issued the search warrant.

[11]Again, the statement made to Guy by the bounty hunters differs from the testimony of Eugene and LeBlanc as to what drugs were in plain view. Again, it is not necessary for the undersigned to reconcile the testimony to decide this issue. It is sufficient that Guy, in his sworn affidavit, stated that the bounty hunters saw crack cocaine and marijuana in plain view. This is sufficient for Guy to act in objective good faith in the execution of the warrant. Again, there is no allegation that Guy lied to, or recklessly mislead, Commissioner Frederick.

## CONCLUSION

Because the undersigned concludes that the statement made by the defendant, Boutte, to Deputy Guy was free and voluntary, and made after Deputy Guy advised the defendant of his rights under *Miranda,* the motion to suppress the statement made by the defendant should be **denied**.

The undersigned also concludes that the evidence seized from the residence of the defendant pursuant to the search warrant issued by Commissioner Frederick, was seized based on the objective good faith reliance of Deputy Sheriff Guy on the validity of the search warrant issued by Commissioner Frederick, and, therefore, the exclusionary rule does not apply to the evidence seized from Boutte's residence.

For these reasons, is recommended that the motion to suppress filed by the defendant, O'Terrell Boutte, be **denied**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten**

**(10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

October 3, 2008, Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE